This interpleader case concerned which defendant was entitled to the proceeds of a fire insurance policy. The insurer had paid those proceeds to the clerk and had requested that the circuit court determine the rights and claims of the defendants to that money pursuant to interpleader Rule 22 of the Alabama Rules of Civil Procedure. The defendants were Mr. Smith, Federal National Mortgage Association (FNMA), and Stockton, Whatley, Davin Company (SWD). Summary judgment motions were filed, and there was correspondence to the trial court which indicated that the parties agreed that the facts presented in the case were basically undisputed and that a motion for a summary judgment was the proper procedure for determining which party was entitled to receive those insurance funds. The learned trial court granted a summary judgment in favor of FNMA and SWD for the insurance proceeds, and Smith duly appealed.
In 1981, Smith executed a real estate mortgage to Coosa Federal Savings Loan Association, which was subsequently transferred and assigned to FNMA. SWD is the servicing agent for FNMA. SWD and FNMA shall be collectively referred to as the mortgagees. Smith became delinquent in his mortgage payments, and foreclosure proceedings were started by the mortgagees under the powers of sale which were contained in the mortgage, with the sale to be held on March 23, 1983. On March 18, 1983, a fire occurred which damaged or destroyed the premises, and Smith advised SWD of such fact by a long distance telephone call on the date of the fire. The foreclosure sale was held on March 23, 1983, and FNMA became the purchaser. Its winning bid was for the exact amount of principal and interest then due plus all mortgage foreclosure expenses.
The insurance policy in question provided coverage for damages resulting from fire, and it stated that a loss would be payable to mortgagees to the extent of their interest. In a paragraph numbered "7," the policy provided as follows:
 "In event of loss, Mortgagor will give immediate notice by mail to the Mortgagee, who may make proof of loss if not made promptly by Mortgagor, and each insurance company concerned is hereby authorized and directed to make payment for such loss directly to the Mortgagee instead of to the Mortgagor and the Mortgagee jointly, and the insurance proceeds, or any part thereof, may be applied by the Mortgagee at its option either to the reduction of the indebtedness hereby secured or to the restoration or repair of the property damaged. In event of foreclosure of this mortgage or other transfer of title to the mortgaged property in extinguishment of the indebtedness secured hereby, all right, title and interest of the Mortgagor in and to any insurance policies then in force shall pass to the purchaser or grantee."
Able attorneys for both sides have favored this court with excellent briefs, for which we are most grateful.
In arguing that the trial court erred in granting a summary judgment for the mortgagees, Mr. Smith relies heavily uponNationwide Mutual Fire Insurance Co. v. Wilborn, 291 Ala. 193,197-199, 279 So.2d 460, 462-464 (1973), wherein the following appears:
 "In Alabama there have developed two distinct (and distinguishable) lines of cases. One line allows the insurance to follow the property past foreclosure and may be classified as the `loss after foreclosure' *Page 925 
concept. The other line of cases makes a difference if the debt owing to the mortgagee has been fully satisfied by foreclosure or otherwise following loss. This can be classified as the `foreclosure after loss' principle.
 "The first line of cases applies where the foreclosure occurs prior to the loss, and allows the mortgagee to recover the proceeds under the policy. Continental Insurance Company of New York v. Rotholz, 222 Ala. 574, 133 So. 587 (1931). In that case, Rotholz brought suit against Continental. The policy contained the New York Standard clause in which Rotholz was designated as mortgagee.
 "Within the policy coverage time and prior to the loss by fire the mortgagee, Rotholz, foreclosed and purchased the property at the foreclosure sale. . . . The fact that the mortgage debt had been satisfied prior to suit did not preclude recovery by the mortgagee under the policy where the loss occurred subsequent to satisfaction of the mortgage debt. . ..
". . . .
 "Where, on the other hand, the loss precedes the foreclosure, the rule is different since the mortgagee has an election as to how he may satisfy the mortgage indebtedness by two different means. He may look to the insurance company for payment as mortgagee under the New York Standard Mortgage clause and may recover, up to the limits of the policy, the full amount of the mortgage debt at the time of the loss. In this event he would have no additional recourse against the mortgagor for the reason that his debt has been fully satisfied.
 "The second alternative available to the mortgagee is satisfaction of the mortgage debt by foreclosure. If the mortgagee elects to pursue this latter option, and the foreclosure sale does not bring the full amount of the mortgage debt at the time of the loss, he may recover the balance due under the insurance policy as owner. If the foreclosure does fully satisfy the mortgage debt, he, of course, has no additional recourse against the insurance company, as his debt has been fully satisfied. Aetna Ins. Co. v. Baldwin Co. Building Loan Association, 231 Ala. 102, 163 So. 604 (1935).
". . . .
 ". . . The rule of law enunciated in Baldwin County
may be stated as follows: Anyone designated as mortgagee in the New York Standard Mortgage clause forfeits his right to recover, under the policy, the amount of loss insured against, by foreclosure and purchase at the foreclosure sale or other full
satisfaction of the mortgage debt, where such satisfaction occurs subsequent to the loss in question.
 "The rationale stated in Baldwin County is that at the time of, and immediately after the fire loss, plaintiff-mortgagee is the creditor of the owner, the plaintiff-mortgagee having had security for that debt in the form of a mortgage on the property and a claim for the loss on the insurance policy. But in no event is the plaintiff-mortgagee due to collect more than the debt secured. If the owner-debtor had paid plaintiff-mortgagee voluntarily, all of the plaintiff's rights and remedies would have immediately terminated, and he could not have proceeded further to enforce any feature of his security. When a mortgagee forecloses and at the sale he collects the full amount of his debt, he is no longer a creditor, as his debt is paid. . . .
 "Thus the status of the Alabama law relative to the effect of foreclosure on the mortgagee's right of recovery, under the policy, for damages as a result of injury to the mortgaged property, was clearly divisible into the two lines of cases discussed above. In the `foreclosure prior to loss' situation (Rotholz) the foreclosure (or other change or increase of ownership or change of title as contemplated by the loss payee clause) occurs in the context of the insured property existing in its undamaged condition *Page 926 
and the satisfaction of debt takes into account the value of such property in its undamaged condition prior to loss and the need for the insurance to follow the property. In the `foreclosure after loss' situation (Baldwin County) the foreclosure occurs in the context of the insured property having been damaged and the satisfaction of the debt takes into account the damaged condition of the property at the time of such foreclosure. In the former situation (foreclosure prior to loss), the value of the undamaged property at the time of foreclosure is an incident to the satisfaction of the debt; while in the latter (foreclosure after loss), to allow recovery of insurance proceeds by the mortgagee after full satisfaction of the debt would amount to mortgagee's unjust enrichment."
The mortgagees agree that the Wilborn case could control if the provisions of paragraph 7 of the mortgage had not provided that all right, title and interest of Smith in and to the insurance policy then in force passed to FNMA and had the policy not further provided the mortgagees with the remedy of using the insurance proceeds to repair and restore. They contend that the Wilborn case is inoperative and that the mortgagees are entitled to the insurance proceeds since they elected to apply those funds to the repairs and restoration of the premises and never elected to apply the insurance proceeds to the extinguishment of the debt. We do not find merit to that argument. In addition to the foregoing language from theWilborn case, the following from a prior decision is especially applicable to that argument of the mortgagees:
 "A debt is as effectually paid whether by the voluntary act of the debtor, or by compulsory proceedings of any sort which have that legal effect. When so, all rights as a creditor immediately terminate. . . .
 "It is a fixed principle that when a mortgagee forecloses his mortgage, and at the sale the property brings, and he collects the full amount of his debt, he is no longer a creditor, but his debt is paid. This is so when he buys at the sale, with due authority, bidding the full amount of his debt. He is then the owner of the property, and not a creditor. There is in the former owner only a statutory right, which is not a property ownership. He has collected his debt as effectually as if another had bought the property and paid him the full amount as purchase money, or if the debtor had paid him in cash of his own accord. Alford v. Southern B. L. Ass'n, 228 Ala. 412, 153 So. 864; Bank of New Brockton v. Dunnavant, 204 Ala. 636, 87 So. 105; Jones v. Meriwether, 203 Ala. 155, 82 So. 185; Harris v. Miller, 71 Ala. 26; Allison v. Cody, 206 Ala. 88, 89 So. 238.
 "After the foreclosure, he can only collect the balance due on his debt, if any. Aetna Ins. Co. v. Hann, 196 Ala. 234 (8), 72 So. 48.
". . . .
 "Argument is made that the interest of the mortgagee, which was insured, is in the property and not his debt secured by it, and while his debt is paid, he continues to own the property. A sufficient answer is that his interest in the property, which was insured, is that which existed at the time of the loss. Thereafter there was no more insurance on the property so lost, but there was a moneyed demand, payable to the mortgagee as his interest in that demand appeared. Such interest is affected by the fact of his mortgage and the amount secured by it. In no event did his interest ever exceed the amount of his mortgage debt."
Aetna Insurance Co. v. Baldwin County Building LoanAssociation, 231 Ala. 102, 103-104, 163 So. 604, 605-606
(1935).
The fire loss happened before the foreclosure sale where FNMA bought the property for the full amount then owed by Smith upon the mortgage debt together with all foreclosure expenses. After the loss, the mortgagees elected to foreclose, and did foreclose, thereby fully extinguishing the mortgage debt. They are not entitled to collect more than the mortgage indebtedness, and it was fully paid by a *Page 927 
foreclosure which occurred after the fire loss. After the loss, there was no more insurance on the property so lost under theBaldwin case. Hence, there was no "insurance policy then in force" as to the lost mortgaged property which could transfer under paragraph 7 of the mortgage.
Because of the rationale of the Wilborn and Baldwin cases, we hold that the learned trial court erred in granting a summary judgment in favor of the mortgagees as to the insurance proceeds in question.
The foregoing opinion was prepared by Retired Circuit Judge EDWARD N. SCRUGGS while serving on active duty status as a judge of this court under the provisions of § 12-18-10 (e) of the Code of Alabama of 1975 and this opinion is hereby adopted as that of the court.
REVERSED AND REMANDED.
All the Judges concur.