FEDERAL LAND BANK OF ST. PAUL v. EDWARDS.

1. Mortgages—Setting Aside Foreclosure Sale—Mistake—Equity—Jurisdiction.

Where mortgagee, without knowing that buildings on mortgaged property had burned, thus reducing its value much below amount of mortgage, at foreclosure sale bid amount of mortgage, court of equity has power to grant relief from said mistake by setting aside foreclosure sale.

2. Same—Judicial Sales—Caveat Emptor—Insurance.

In suit by mortgagee to set aside foreclosure sale, on ground that it bid in property for amount of mortgage in ignorance of fact that buildings had previously burned, insurance company may not invoke doctrine of *caveat emptor*, since said doctrine, with reference to judicial sales, relates only to matters of title ascertainable by inspection of public records.

3. Insurance—Fraudulent Concealment—Canceling Policy.

Where, insurance company, on issuing policy, did not ask insured whether mortgage on insured property, of which it had knowledge, was being foreclosed, failure of insured to volunteer said information may not be made basis for canceling policy, on ground of fraudulent concealment.

Appeal from Montcalm; Hawley (Royal, A.), J., presiding. Submitted January 19, 1933. (Docket No. 57, Calendar No. 36,846.) Decided March 2, 1933.

Bill by Federal Land Bank of St. Paul against Paul V. Edwards and others to set aside a foreclosure sale. Decree for plaintiff. Defendant Farmers' Mutual Fire Insurance Company of Ionia, Michigan, appeals. Affirmed.

*Glenn D. Mathews,* for appellant.

*Fred R. Everett,* for appellee.

WIEST, J.   In November, 1919, defendants Edwards gave plaintiff a mortgage for $2,300, on their 40-acre farm in Montcalm county, and obligated themselves to keep the buildings thereon insured for the benefit of the mortgagee.   In May, 1931, plaintiff commenced foreclosure of the mortgage by advertisement and fixed the sale for August 25, 1931. July 27, 1931, defendants Edwards applied to defendant insurance company for insurance on the buildings and personal property, and on August 17, 1931, they paid the premium and the policy was issued in the sum of $3,500, on the buildings, and $800 on personal property, and, with mortgage clause attached, sent by the insurance company to plaintiff at St. Paul, Minnesota.   August 24, 1931, the buildings on the farm were destroyed by fire, leaving the farm worth about $1,000.   The next morning sale on foreclosure was had, and, without knowledge of destruction of the buildings, the property was bid in by plaintiff mortgagee for the amount of the mortgage, and a sheriff's deed was delivered and recorded.   October 2, 1931, plaintiff filed the bill herein to set the foreclosure sale aside and restore the mortgage because of its bid under a mistake of fact and of loss thereby.   Defendants Edwards appeared and commendably made no objection to granting such equitable relief.   The insurance company was made a nominal party defendant, and it appeared and opposed relief to plaintiff, and, by cross-bill, sought cancellation of the insurance, alleging fraudulent concealment of the foreclosure proceeding by defendants Edwards in making the application for the insurance and failure of plaintiff to give it notice of such increased hazard.   The insurance company prosecutes this appeal from the decree in the circuit vacating the foreclosure sale

and sheriff's deed thereunder, restraining payment of the insurance to other than plaintiff, and dismissing the cross-bill of the insurance company. In this court the insurance company contests the right of plaintiff to the relief granted, and as well submits the matter in its cross-bill for adjudication.

It is of little concern, if any, to the insurance company whether the foreclosure sale be vacated or not, if it is liable on its policy. However, it insists upon consideration of its cross-bill, and as all parties in interest have presented their proofs, we will pass on the points raised.

First, the vacation of the foreclosure sale. If it is not vacated plaintiff will suffer loss and defendants Edwards will profit thereby. Defendants Edwards do not seek any such unconscionable advantage. The foreclosure sale was held the morning after the fire and in entire ignorance on the part of plaintiff's representatives of such loss of the buildings, and such ignorance was not by reason of want of ordinary diligence. The sale was not at the mortgaged premises in the township of Bushnell, but at the courthouse in the city of Stanton, as the law required. Plaintiff, by the foreclosure, has injured no one, and now only seeks to avert a loss occasioned by a mistake of fact and which, if denied, will accord others, who do not even ask it, an unconscionable advantage. Plaintiff, without blame, laboring under a mistake of fact, bid in the property at the mortgage sale in a manner wholly unintended had the truth been known, and it is no more than plain justice, in a case like this, where the court can restore the *status quo,* without detriment to any one, and no interests of third parties are involved, for equity to grant relief from such a unilateral mistake of fact. See *Peterson* v. *First National Bank of*

*Ceylon,* 162 Minn. 369 (203 N. W. 53, 42 A. L. R. 1185); *Root* v. *King,* 91 Mich. 488.

"A sale may be vacated at the instance of a party injured thereby on the ground of his surprise, that is, where he justifiably relies on the existence of a certain state of facts, * * * and is guilty of no negligence or lack of attention, but discovers, too late to protect his interests, contrary facts which, had he known them in time, would have materially affected his actions with reference to the sale." 42 C. J. p. 234.

If the sale is not vacated the loss of the buildings will fall upon plaintiff.

Defendant insurance company invokes the doctrine of *caveat emptor.* That doctrine, with reference to judicial sales, relates to matters of title ascertainable by inspection of public records. The doctrine has no applicability to any issue in this case.

Should the policy be canceled? The by-laws of the insurance company provided:

"The form of application for insurance to be signed by the applicant shall be prescribed by the secretary, which application shall make part of the contract of insurance, and be considered as a warranty of the truth of all the facts stated therein."

The form of application, prepared by the secretary and signed by the Edwards, contained no inquiry about foreclosure proceedings. The agent who procured the application testified that he did not ask whether the mortgage was in default or being foreclosed. The secretary of the insurance company testified that, had he known of the foreclosure proceeding, the policy would not have been issued, but, during his eight years with the company, he

said he had issued lots of policies for the company upon mortgaged property, "and during all this time. I don't remember asking any of the applicants whether or not mortgages were being foreclosed on their farms." Fraudulent concealment of the foreclosure cannot be based on a failure of the insured to volunteer information not sought by the insurer. If considered material to the risk, the company was aware of need of information on the subject, and if a failure to inquire be considered no excuse for failure of a farmer to volunteer the information, and, if he does not so volunteer, he is guilty of a fraudulent concealment, then a new meaning is accorded such term.

But the insurance company claims that, even though the question was not asked about foreclosure, there was a duty upon the insured to disclose that fact under a clause in the application, reading:

"And the said applicant covenants and agrees that the foregoing is a just, full, and true exposition of all the facts and circumstances affecting the risk of the property insured."

The questions in the application prepared by the insurance company were all properly answered. No question relative to foreclosure of the mortgage was asked, and no representation on that subject was made. If the insurance company considered a mortgage foreclosure material to the risk they should have included a question as to such fact in the application. The insured may not be held to have fraudulently concealed a fact that the insurer never inquired about.

"And where the insurer propounds questions to the applicant, and he makes full and true answers, he is not answerable for an omission to mention the existence of other facts about which no inquiry is

made of him, though they may turn out to be material for the insurer to know in taking the risk.'' 14 R. C. L. p. 1024.

The insurer is assumed to know the extent of the information desired, and to seek it, and cannot avoid liability by claiming there was concealment of the fact of foreclosure when it did not ask about such a matter and called for no such information in its written application. There was no fraudulent concealment.

The mortgage clause, attached to the policy and sent by the insurance company to plaintiff, provided:

''Loss or damage, if any, under this policy, shall be payable to the Federal Land Bank of St. Paul, a body corporate, of St. Paul, Minn., as mortgagee, as its interest may appear, and this insurance, as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or the owner of the within-described property, nor by any foreclosure or other proceedings or notice of sale relating to the property.''

The insured never saw the policy, for as soon as they paid the premium, on August 17, 1931, the insurance company mailed the policy to the plaintiff. The insurance company had a sort of gentlemen's understanding with the Federal Land Bank, under which it received notice of foreclosure proceedings in cases involving its risks, and complains of want of such notice in this instance. The fire occurred seven days after the policy was mailed at Ionia to the mortgagee at St. Paul. Inasmuch as the policy provided that ''foreclosure or other proceedings or notice of sale relating to the property'' should not invalidate the insurance, we pass the complaint as of no importance.

We find no fraudulent concealment by the insured, and the cross-bill of the insurance company was properly dismissed.

The decree in the circuit court is affirmed, with costs against the insurance company.

McDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, FEAD, and BUTZEL, JJ., concurred.